UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERIC PAYNE,<br><br>Defendant. | Criminal Action No. TDC-16-0315 |

## MEMORANDUM OPINION

On June 8, 2016, Defendant Eric Payne was convicted of misdemeanor simple assault, 18 U.S.C. § 113(a)(5) (2012), at a bench trial before a United States Magistrate Judge. Payne now appeals on the basis that the evidence at trial was insufficient to sustain the conviction. For the reasons set forth below, the conviction is affirmed.

## BACKGROUND

The following facts were presented at trial. On the evening of November 12, 2015, Payne, a military veteran, went to The Club at Andrews ("the Club"), a restaurant and recreation facility located within Joint Base Andrews, a federal military installation. Payne uses a wheelchair because he has had his right leg amputated; he does not wear a prosthetic limb. That evening, the Club was hosting karaoke night, and the music was very loud.

Donnell Barnett ("Barnett"), a cook, was working at the Club that night. Barnett's wife, Yoshiko Barnett, was also at the Club to celebrate a friend's birthday. When Barnett's shift ended at approximately 10:00 p.m., he sat down at the bar with a bottle of beer, approximately ten feet away from Yoshiko Barnett and her friend.

Looking towards the dance floor, Barnett observed Payne speaking with Yoshiko Barnett and her friend and showing them pictures. Barnett was familiar with Payne and, in fact, had served him food and had a conversation with him that very night. Barnett watched as Payne put his arm around Yoshiko Barnett's shoulders and placed his hand near her buttocks. Unhappy with this turn of events, Barnett approached Payne, tapped him on the shoulder, and "asked him to back up because that was my wife and he was too close." Tr. at 105, Gov't Ex. 2, ECF No. 1-2. Because the music was loud, Barnett stood close to Payne while making this request. Barnett spoke loudly enough that Patricia Williams, a Club employee whose shift had also just ended, could hear him over the music while she was sitting at the bar.

According to Barnett, Payne then became angry, used his arms to push himself out of his wheelchair, and hit Barnett twice in the chest with his open palms. The force of the strikes was not enough to cause Barnett to spill his beer. Shocked, Barnett put down his beer bottle, but before he could otherwise react, Williams and another co-worker intervened and escorted Barnett outside the Club. Barnett did not have any further interaction with Payne that night.

Williams testified that she did not see the person Barnett had confronted. She did not see Payne at the Club that night, and did not see him put his hands on Barnett. Williams testified that she escorted Barnett from the club because she did not want him to get in trouble. Joyce Tyler, a bartender whose shift had also ended at 10:00 p.m., testified that while she was sitting at the bar listening to the karaoke music, she saw Barnett stand up behind his wife and speak to Payne, but she did not see Payne touch Barnett.

Barnett did not report the incident. However, on November 25, 2015, the police contacted him, and he spoke to them about the alleged assault. On November 30, 2015, at the request of the police, he and Yoshiko Barnett went to the police station, where he signed a

statement describing the incident. Yoshiko Barnett also gave a statement. On December 2, 2015, the police approached Williams and interviewed her about the incident. The police asked Tyler for a statement on December 8, 2015.

Payne was charged in a superseding criminal complaint with simple assault upon Barnett, in violation of 18 U.S.C. § 113(a)(5). The superseding criminal complaint also charged Payne with a number of other misdemeanors that he allegedly committed at Joint Base Andrews, including charges stemming from a traffic stop and from a separate incident at the Club. The charges resulted in three separate trials, each held before United States Magistrate Judge Charles B. Day on June 12, 2016.

At the trial on the simple assault charge, the Government's only witness was Barnett. At the close of Barnett's testimony, Payne moved for judgment of acquittal. The Court denied the motion. The defense then called Williams and Tyler as witnesses. After hearing the testimony, the Magistrate Judge found Payne guilty of the assault of Donnell Barnett and sentenced him to a fine of $250 and a $10 special assessment.

## DISCUSSION

The sole issue on appeal is whether the Government presented sufficient evidence to support Payne's conviction for simple assault pursuant to 18 U.S.C. § 113(a)(5). Payne argues that the discrepancies in the trial testimony of Barnett, Williams, and Tyler preclude a finding of guilt beyond a reasonable doubt. The Government urges the Court to affirm based on the Magistrate Judge's factual findings, particularly his determination that Barnett's testimony was credible.

I.      **Standard of Review**

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. An appeal to a district judge is not a "trial de novo." Fed. R. Crim. P. 58(g)(2)(D). Instead, "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." *Id.*; *see also United States v. Bursey*, 416 F.3d 301, 305-306 (4th Cir. 2005); *United States v. Lofton*, 233 F.3d 313, 317 (4th Cir. 2000).

The Court reviews *de novo* the denial of a motion for judgment of acquittal made pursuant to Federal Rule of Criminal Procedure 29. *United States v. Strayhorn*, 743 F.3d 917, 921 (4th Cir. 2014); *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006). In conducting such a review on the issue of sufficiency of the evidence, the Court does not "weigh the evidence or assess the credibility of witnesses." *United States v. Kelly*, 510 F.3d 433, 440 (4th Cir. 2007). The Court must sustain a guilty verdict if, viewing the evidence in the light most favorable to the Government, and drawing all reasonable inferences and resolving all contradictions in the testimony in the Government's favor, the verdict is supported by "substantial evidence." *United States v. Moye*, 454 F.3d 390, 394 (4th Cir. 2006); *Smith*, 451 F.3d at 216. "Substantial evidence" is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Smith*, 451 F.3d at 216; *see also Strayhorn*, 743 F.3d at 921. A conviction may be reversed based on insufficient evidence only when "the prosecution's failure is clear." *Moye*, 454 F.3d at 394 (quoting *United States v. Jones*, 735 F.2d 785, 791 (4th Cir. 1984)).

In evaluating the sufficiency of evidence presented at a bench trial, a reviewing court must be mindful of the "great discretion accorded to the trial judge," who "weighs the evidence, determines the credibility of the witnesses, and finds the facts." *United States v. Bales*, 813 F.2d 1289, 1293 (4th Cir. 1987). A reviewing court may reverse a trial judge's factual finding only if it is "clearly erroneous." *Id.* "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## II. Simple Assault

In order to determine whether substantial evidence supports Payne's conviction, the Court's first task is to define the offense in question. "Simple assault" committed "within the special maritime and territorial jurisdiction of the United States" is a federal misdemeanor crime. 18 U.S.C. § 113(a)(5). Simple assault is not defined in 18 U.S.C. § 113(a)(5), or anywhere else in federal criminal law. However, "[i]t is a settled principle of interpretation that, absent other indication, 'Congress intends to incorporate the well-settled meaning of the common-law terms it uses.'" *United States v. Castleman*, 134 S. Ct. 1405, 1410 (2014) (quoting *Sekhar v. United States*, 133 S. Ct. 2720, 2724 (2013)). Thus, the "various federal statutes criminalizing 'assault' incorporate the long-established common law definition of that term." *United States v. Passaro*, 577 F.3d 207, 217-18 (4th Cir. 2009). Accordingly, federal courts seeking to construe the various assault offenses enumerated in § 113 have looked to the common law for guidance, examining the definitions of the "closely interrelated" common law crimes of assault and battery. *United States v. Delis*, 558 F.3d 177, 180 (2d Cir. 2009); *United States v. Lewellyn*, 481 F.3d

695, 697 (9th Cir. 2007); *United States v. Bayes*, 210 F.3d 64, 68 (1st Cir. 2000); *United States v. Bell*, 505 F.2d 539, 540 (7th Cir. 1974).

At common law, the crime of assault had two definitions. The first was an attempt to commit a battery, while the second was "an act putting another in reasonable apprehension of bodily harm." *Bayes*, 210 F.3d at 68 (citing *Bell*, 505 F.2d at 540); *see also Delis*, 558 F.3d at 180 (stating that common-law assault "consisted of either attempted battery or the deliberate infliction upon another of a reasonable fear of physical injury"). The common law crime of battery, in turn, "consisted of 'the unlawful application of force to the person of another,' including an offensive touching." *Delis*, 558 F.3d at 180 (quoting 2 Wayne R. LaFave, Substantive Criminal Law § 16.2, at 552 (2d ed. 2003)). An "offensive touching" would include "the least touching of another's person willfully, or in anger." *Bayes*, 210 F.3d at 68 (quoting 3 Blackstone, Commentaries on the Laws of England 120 (Univ. of Chicago Press ed. 1979) (1768)). "Even a seemingly slight, but intentional, offensive touching can suffice for a battery." *Lewellyn*, 481 F.3d at 698.

Over time, the term "assault" has come to include both common-law assaults and common-law batteries, *see Delis*, 558 F.3d at 181, and evidence of a completed battery has been deemed sufficient to prove that an assault occurred, *see Lewellyn*, 481 F.3d at 697. Accordingly, courts have concluded that evidence of any intentional, offensive touching can establish a "simple assault" under § 113(a)(5). *See United States v. Smith*, 812 F.2d 161, 164 (4th Cir. 1987) (holding that evidence that the defendant grabbed the victim's wrist and arm amounted to simple assault under the predecessor provision to § 113(a)(5)); *see also Lewellyn*, 481 F.3d at 698-99 (holding that intentionally spitting on another person falls within the ambit of "simple assault" under § 113(a)(5)); *Bayes*, 210 F.3d at 69 (holding that testimony that the defendant

"rubbed" and "squeezed" the victim's buttocks, causing her to feel "angry, surprised, and frightened" was sufficient to sustain a conviction under § 113(a)(5)).

### III. Sufficiency of the Evidence

With this framework in place, the Court reviews the evidence presented at trial to determine whether it was sufficient to prove beyond a reasonable doubt that Payne committed a simple assault against Barnett. At trial, Barnett testified that when he confronted Payne about getting too close to his wife, Payne rose up and struck Barnett in the chest twice. A reasonable factfinder could conclude that Payne hit Barnett intentionally, particularly because there was more than one blow, and that the touching was offensive, particularly where Barnett was pulled away by others to prevent him from getting into trouble. Barnett's testimony alone, therefore, constitutes "substantial evidence" that Payne committed simple assault. *See United States v. Wilson*, 115 F.3d 1185, 1190 (4th Cir. 1997) (stating that the "uncorroborated testimony of one witness" may be sufficient to sustain a conviction).

Payne argues that Barnett's version of events cannot be credited because it is contradicted by other witnesses and defies common sense. Specifically, Payne notes that neither Williams nor Tyler saw Payne strike Barnett, and that Williams escorted Barnett from the Club because of his own behavior. Payne further asserts that he could not possibly have stood from his wheelchair and hit Barnett without losing his balance, and that if Barnett's account were true, the force of the strike would have caused Barnett to spill his beer. Payne also questions the truthfulness of Barnett's testimony in light of the fact that Barnett did not initiate a complaint against Payne.

The Magistrate Judge, however, specifically found Barnett's testimony to be credible. Acknowledging that the defense witnesses, Williams and Tyler, had testified that they did not see Payne strike Barnett, the Magistrate Judge nevertheless concluded, "I do not believe that Mr.

Barnett fabricated that event" and "I do not find that Mr. Barnett made this whole story up." Tr. at 153. The Magistrate Judge specifically considered the fact that Barnett never filed a complaint with the police, and thus did not initiate the legal proceedings, as a factor supporting the credibility of his account. In assessing whether substantial evidence exists to support a conviction, the Court does not "weigh the evidence or review the credibility of witnesses." *United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983); *see also United States v. Leath*, 14 F. App'x 240, 240 (4th Cir. 2001) (unpublished) (stating, in an appeal from a conviction after a bench trial, that the reviewing court "does not review the credibility of witnesses" in evaluating the sufficiency of the evidence). Thus, this Court accepts the Magistrate Judge's credibility determination.

Accepting Barnett's testimony as credible, the Court discerns no clear error in the finding that Payne struck Barnett in the chest twice. The testimony of Williams and Tyler that they did not see the assault from their vantage points, and the claim that Payne presumably would have difficulty raising himself up in his wheelchair, do not render Barnett's account inherently implausible. Neither Williams nor Tyler testified that they had focused their attention on Barnett that evening, or that they had any particular reason to do so. The fact that Williams acknowledged that she did not see Payne at the Club that evening, when it is undisputed that he was present, reveals that her observations of the events were limited. The Magistrate Judge thus could reasonably infer that Williams and Tyler simply did not see the assault, either because their view was blocked or their attention was diverted by the karaoke or otherwise. *See Bursey*, 416 F.3d at 308 (upholding a factual finding based on witness testimony as not clearly erroneous even though there was conflicting testimony on that point). As for Payne's physical condition, there was no evidence at trial that Payne was physically unable to take the actions described by

Barnett. Mindful of the principle that the factfinder, not the reviewing court, makes the final determination when there are two conflicting but reasonable views of the evidence, *see Moye*, 454 F.3d at 394, the Court cannot conclude, on this record, that the Magistrate Judge's finding that Payne struck Barnett was clearly erroneous. Given that Payne does not, and cannot, dispute that striking a person in the chest amounts to a simple assault under § 113(a)(5), *see Bayes*, 210 F.3d at 69; *Smith*, 812 F.2d at 163-64, the Court finds that there was substantial evidence from which a reasonable factfinder could conclude that Payne committed simple assault under § 113(a)(5). The conviction is therefore affirmed.

## IV.    Civil Claims

On August 24, 2016, Payne sent a letter to the Court complaining that he was victimized by law enforcement officers. The complaints originate from the traffic stop that was the subject of a separate trial. The Court directed defense counsel to provide the Court with clarification as to the nature of Payne's filing and the relief sought. On October 25, 2016, concurrent with the filing of his appellate brief, counsel for Payne filed a letter with the Court asserting that Payne seeks punishment of and compensation from federal law enforcement officers who subjected him to excessive force, unlawful detention, loss of property, and retaliatory prosecution. On December 7, 2016, Payne submitted a second letter which appears to make similar claims. To the extent that these filings indicate that Payne seeks to assert claims based on alleged violations of his civil rights, such claims are not properly asserted as part of the appeal of his criminal conviction. These filings thus provide no basis to alter the Court's determination.

## CONCLUSION

For the foregoing reasons, the conviction is AFFIRMED. The Clerk is directed to CLOSE this case. A separate Order shall issue.

Date: March 1, 2017

THEODORE D. CHUANG
United States District Judge